DAVID W. SCOFIELD - 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone:  (801) 322-2002
Facsimile:  (801) 912-0320
Email:  dws@psplawyers.com

**[Additional counsel on signature pages]**
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| JOSE MORENO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>POLARITYTE, INC., DENVER LOUGH, AND JEFF DYER,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED**<br><br><u>**Case No. 2:18-cv-00510-JNP   .**</u> |

Plaintiff Jose Moreno ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), conference call transcripts, news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is a federal securities class action on behalf of all persons or entities who purchased or otherwise acquired PolarityTE, Inc. ("PolarityTE" or the "Company") common shares during the period from March 31, 2017 through June 22, 2018 (the "Class Period").

2. PolarityTE purports to be a commercial-stage biotechnology and regenerative biomaterials company focused on discovering, designing and developing a range of regenerative tissue products and biomaterials for the fields of medicine, biomedical engineering and material sciences. The Company's key development is SkinTE, which is intended to be used by physicians or other appropriate healthcare providers for homologous uses of skin tissues/integument. Patients who have suffered from an event, disease, process or acquired deficit that results in the functional loss or void of skin/integument systems can receive SkinTE as an adjunct and/or in place of split-thickness skin grafting, full-thickness grafting, temporizing skin coverage and/or skin substitute products.

3. The Company is based Salt Lake City, Utah.

4. PolarityTE is listed on the NASDAQ under the ticker symbol "COOL".

5. On April 7, 2017, the Company announced the closing of a transaction through which the Company purchased Dr. Denver Lough's pending Patent #14/954,335 (the "Patent") in exchange for over $104 million of COOL stock.

6. Just one week prior to this closing, on March 31, 2017, Dr. Lough received a notice of non-final rejection of the Patent.

7. The US Patent Trademark Office (USPTO) mailed Dr. Lough a letter indicating the non-final rejection of his Patent on April 7, 2017 – the same day as the transaction closing.

8. Notwithstanding the Patent's non-final rejection status, the Company has never disclosed this material information to the public, either through its several SEC disclosures or any other forum.

9. On May 29, 2018, the Company filed an S-8 registration, which would allow management and promoters to sell hundreds of millions of dollars of common stock.

10. That same week, on June 4, 2018, the USPTO issued a final rejection for Patent #14/954,335.

11. On June 25, 2018, Citron Research published a report exposing the Defendants' failure to disclose the Company's March 31, 2017 notice of non-final rejection of its Patent. Moreover, the Citron Research report highlighted a June 4, 2018 USPTO final rejection of Patent #14/954,335.

12. On this news, COOL stock plunged from $38.97 at the close of Friday, June 22, 2018 to an open of $25.60 on Tuesday, June 26, 2018 – a loss of more than 34%.

## JURISDICTION AND VENUE

13. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

15. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

16. Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company's common shares are listed on the NASDAQ.

17. In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

18. Plaintiff Jose Moreno was a shareholder of PolarityTE during the Class Period. As set forth in the accompanying certification, incorporated by reference herein, Plaintiff acquired PolarityTE shares on June 8, 2018 and purchased, acquired, and held shares of the Company at artificially inflated prices during the Class Period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

19. Defendant PolarityTE is a commercial-stage biotechnology and regenerative biomaterials company focused on discovering, designing and developing a range of regenerative tissue products and biomaterials for the fields of medicine, biomedical engineering and material sciences. The Company is based Salt Lake City, Utah. PolarityTE is listed on the NASDAQ under the ticker symbol "COOL".

20. Defendant Denver Lough, M.D., Ph.D. ("Lough") has served as Chief Executive Officer ("CEO"), Chief Scientific Officer, and Chairman of the Board of Directors since December 1, 2016. Lough is also the inventor of the Patent.

21. Defendant Jeff Dyer ("Dyer") has served as a member of the Board of Directors since February 2, 2017.

22. The defendants listed in paragraphs 20-21 are collectively referred to herein as the "Individual Defendants."

23. The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected. Because of their positions within the Company and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### I. PolarityTE Acquires Dr. Lough's Patent Application.

24. On April 7, 2017, PolarityTE announced the completion of a merger agreement between Majesco Acquisition Corp., a Nevada corporation and wholly owned subsidiary of the Company ("Acquisition Sub"), Polarityte, Inc., a Nevada corporation ("Polarityte NV") and Dr. Denver Lough, the holder of all of the outstanding capital of Polarityte NV and the Company's Chief Executive Officer (the "Transaction").

25. As a result of the Merger, Polarityte NV became a wholly owned subsidiary of the Company. Polarity NV is the owner of a novel regenerative medicine and tissue engineering platform developed and patented by Dr. Lough.

26. In connection with the closing of the Merger, on April 5, 2017, the Company issued Dr. Lough 7,050 shares of Series E Convertible Preferred Stock (the "Series E Shares") which are convertible into an aggregate of 7,050,000 shares of the Company's common stock or

40.95% of the Company's currently issued and outstanding common stock on a fully diluted basis.

27.  As Lough described in a correspondence with the SEC on February 22, 2017, his patent application #14/954,335 was the key asset exchanged through the Transaction:

> As a result, at closing, the patent application would be owned by the Company through its wholly owned subsidiary without the need for further assignments or recordation with the Patent Trademark Office. There was never any intent to acquire an ongoing business and no ongoing business was acquired. **The asset is preserved in a stand-alone entity merely as a vehicle to provide the Company a seamless means to acquire the asset (a patent application)** without undue cost, expense and time. Polarity NV has never had employees and therefore no employees will be acquired for the transaction.

### II. Lough Received Notice of Non-Final Rejection of His Patent One Week Before the Transaction Closed.

28.  Just one week prior to the Transaction closing, on March 31, 2017, Dr. Lough received a notice of non-final rejection of the Patent. Moreover, the USPTO mailed Dr. Lough a letter indicating the non-final rejection of his Patent on April 7, 2017 – the same day as the transaction closing:

| 14/954,335 | Methods for Development and Use of Minimally Polarized Function Cell Micro-Aggregate Units in Tissue Applications Using LGR4, LGR5 and LGR6 Expressing Epithelial Stem Cells | 18000.0001US U1 |

**Transaction History**

| Date | Transaction Description |
|---|---|
| 04-27-2017 | Email Notification |
| 04-27-2017 | Email Notification |
| 04-27-2017 | Filing Receipt - Replacement |
| 04-27-2017 | Change in Power of Attorney (May Include Associate POA) |
| 04-25-2017 | Correspondence Address Change |
| 04-14-2017 | Mail Pre-Exam Notice |
| **04-07-2017** | **Mail Non-Final Rejection** |
| **03-31-2017** | **Non-Final Rejection** |
| 03-30-2017 | Information Disclosure Statement considered |

### III. Defendants Misled Investors and Omitted Material Information

29. Notwithstanding the Patent's non-final rejection status, neither the Company nor Lough made any disclosures or statements pertaining to the Patent at the time of the Transaction closing.

30. Since the time of the Patent's acquisition on April 7, 2017, the Company has filed thirty 8-k filings with the SEC. There has never been a disclosure pertaining to the Patent's non-final rejection status.

31. For example, in the Company's 2017 10-K Report, ended October 31, 2017, intellectual property risks were discussed in generic terms, never indicating the key Patent's flailing status:

> Our success depends significantly on our ability to protect our proprietary rights in technologies that presently consist of trade secrets and patent applications. **We currently have no issued patents relating to any of our product candidates.** We intend to expand our patenting activities and rely on patent protection, as well as a combination of copyright, trade secret and trademark laws and nondisclosure, confidentiality and other contractual restrictions to protect our proprietary technology, and there can be no assurance these methods of protection will be effective. These legal means afford only limited protection and may not adequately protect our rights or permit us to gain or keep any competitive advantage. In addition, our presently pending patent applications include claims to material aspects of our activities that are not currently protected by issued patents. The patent application process can be time consuming and expensive. **We cannot ensure that any of the pending patent applications we acquire, have acquired, or may file will result in issued patents.** Competitors may be able to design around our patents or develop procedures that provide outcomes that are comparable or even superior to ours. . . **The failure to obtain and maintain patents and/or protect our intellectual property rights could have a material and adverse effect on our business, results of operations, and financial condition**. We cannot be certain that, if challenged, any patents we ultimately obtain would be upheld because a determination of the validity and enforceability of a patent involves complex issues of fact and law. If one or more of any patents we obtain is invalidated and/or held unenforceable, such an outcome could reduce or eliminate any competitive advantage we might otherwise have had.

32. Worse than the Company's SEC filings' flagrant omissions, **PolarityTE management has even gone so far as to publicly state that the Patent driving SkinTE is already patented**. In a Fox Business interview, published on October 24, 2017, Defendant Lough (CEO) stated, "We found out this was sort of a novel technology, and, we ended up patenting it and being approached by a variety of investors…"

33. On August 8, 2017, Defendant Jeff Dyer contributed to a Forbes article titled "PolarityTE: Will This Biotech Be the Next Amazon or Tesla?" As the title indicates, Dyer chronicled the Company as the next breakthrough in the biotechnology field, attracting the interest and involvement of one the world's best biotech investors:

> PolarityTE's technology — if it works — will be extremely disruptive to incumbents . . . Despite the promise of PolarityTE's technology, Lough and Swanson would likely never have resigned from Hopkins to pursue the venture without an innovative financing model . . . Enter billionaire investor Philip Frost and his investment team. In the biotech sector, and especially in small cap ventures, there is no bigger name than Dr. Philip Frost. Across a career spanning over 40 years, Frost has built a net worth over 4 billion dollars, the vast majority of which derives from founding, buying, selling, and investing in biotechnology companies.

### IV. Suspect Behavior Leading up to the Patent's Ultimate Rejection

34. On May 29, 2018, the Company filed an S-8 registration with the SEC, which allows management and promoters to sell hundreds of millions of dollars of common stock.

35. On June 4, 2018, PolarityTE announced an offering of 2.1 million shares priced at $25.50 each. The Company stated that it intends to "use the net proceeds from the offering for research and development of its products and product candidates, efforts toward commercialization and required registration or approval of its products and product candidates with applicable regulatory authorities and general corporate purposes."

## THE TRUTH EMERGES

36. On June 25, 2018, Citron Research published a report exposing the Defendants' failure to disclose the Company's March 31, 2017 notice of non-final rejection of its Patent.

37. Moreover, **the Citron Research report highlighted a June 4, 2018 USPTO final rejection of Patent #14/954,335:**

| 14/954,335 | Methods for Development and Use of Minimally Polarized Function Cell Micro-Aggregate Units in Tissue Applications Using LGR4, LGR5 and LGR6 Expressing Epithelial Stem Cells | 18000.0001USU1 |

**Transaction History**

| Date | Transaction Description |
|---|---|
| 06-14-2018 | Electronic Review |
| 06-14-2018 | Email Notification |
| 06-14-2018 | Mail Final Rejection (PTOL - 326) |
| **06-04-2018** | **Final Rejection** |
| 06-04-2018 | Information Disclosure Statement considered |
| 06-04-2018 | Information Disclosure Statement considered |

38. As of June 25, 2018, the Company had failed to disclose the USPTO's rejection of the Patent to its investors.

39. On this news, COOL stock plunged from $38.97 at the close of Friday, June 22, 2018 to an open of $25.60 on Tuesday, June 26, 2018 – a loss of more than 34%.

## CLASS ACTION ALLEGATIONS

40. With respect to all Counts alleged in this Complaint, Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of himself and all persons or entities who purchased or otherwise acquired PolarityTE during the period from March 31, 2017 1through June 25, 2018 (the "Class Period").

41. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

42. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PolarityTE common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. As of June 25, 2018, the Company had 20,750,000 shares outstanding. Record owners and other members of the Class may be identified from records maintained by PolarityTE or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a. Whether the Securities Exchange Act was violated by Defendants;

    b. Whether Defendants omitted and/or misrepresented material facts;

    c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e. Whether the price of the Company's stock was artificially inflated; and

    f. The extent of damage sustained by Class members and the appropriate measure of damages.

44. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

45. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **LOSS CAUSATION**

47. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

48. During the Class Period, Plaintiff and the Class purchased and/or acquired PolarityTE securities at artificially inflated prices and were damaged thereby.

49. On June 25, 2018, Citron Research published a report exposing the Defendants' failure to disclose the Company's March 31, 2017 notice of non-final rejection of its Patent. Moreover, the Citron Research report highlighted a June 4, 2018 USPTO final rejection of Patent #14/954,335.

50. On this news, COOL stock plunged from $38.97 at the close of Friday, June 22, 2018 to an open of $25.60 on Tuesday, June 26, 2018 – a loss of more than 34%.

51. The decline in PolarityTE share price is attributable to the information provided by the Citron Research report, including the report's compilation of facts showing the Defendants' track record of misleading behavior and consistent omissions of material fact.

## **FRAUD ON THE MARKET**

52. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

   a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

   b. The omissions and misrepresentations were material;

   c. The Company's common stock traded in efficient markets;

   d. The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

   e. Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

53. At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

54. The statutory safe harbor provided for forward-looking statements under certain conditions do not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

55. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**CAUSES OF ACTION**

**COUNT I**

**Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

56. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58. Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the Class Period.

59. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and

the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II

### Violation of § 20(a) of the Exchange Act
### (Against Individual Defendants)

60. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

62. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63. As set forth above, PolarityTE and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.  determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

B.  awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

C.  awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

D.  awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: June 26, 2018                                        Respectfully submitted,

                                                                                 **PETERS | SCOFIELD**
                                                                                 *A Professional Corporation*

                                                                                /s/ David W. Scofield
                                                                                 DAVID W. SCOFIELD
                                                                                 Additional Counsel on next page

        **BLOCK & LEVITON LLP**
        Jeffrey C. Block, *pro hac vice forthcoming*
        Jacob A. Walker, *pro hac vice forthcoming*
        155 Federal Street, Suite 400
        Boston, MA 02110
        Tel: 617-398-5600
        Fax: 617-507-6020
        Jeff@blockesq.com
        Jake@blockesq.com

        *Counsel for Plaintiff*