# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE POLARITYE, INC. SECURITIES LITIGATION,<br><br>THIS DOCUMENT RELATES TO:<br>All Actions | **MEMORANDUM DECISION AND ORDER GRANTING LAWI'S MOTION TO APPOINT LEAD PLAINTIFF AND ORDERING SUPPLEMENTAL BRIEFING ON MOTION TO APPOINT LEAD COUNSEL**<br><br>Master File No. 2:18-cv-510-JNP (Consolidated with 2:18-cv-514-DB)<br><br>District Judge Jill Parrish |

This matter is before the court on the Motions of Yedid Lawi for Appointment as Lead Plaintiff and Approval of Counsel and the Motions for Appointment of Movant Michael A. Motto as Lead Plaintiff and Approval of Counsel.

## BACKGROUND

Plaintiff Jose Moreno filed this private federal securities class action complaint on June 26, 2018, alleging violations by defendant PolarityTE, Inc. ("PolarityTE") of section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, promulgated by the SEC at 17 C.F.R. § 240.10b-5, as well as violations of section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), by Denver Lough, M.D., Ph.D. and Jeff Dyer (the "Individual Defendants"). PolarityTE is a biotechnology and regenerative biomaterials company incorporated in Delaware with its principal place of business in Salt Lake City, Utah. PolarityTE is listed on the NASDAQ under ticker symbol "COOL."

The parties allege that PolarityTE's misconduct occurred over the period from March 31, 2017 to June 22, 2018 (the "Class Period") in the following manner. First, on April 7, 2017, PolarityTE purchased a patent from Dr. Denver Lough (the "Lough Patent"), which had been

rejected by the U.S. Patent and Trademark Office ("USPTO") one week prior. Then, on May 29, 2018, PolarityTE filed an S-8 registration but failed to disclose the rejection of the Lough Patent. On June 4, 2018, the USPTO issued a final rejection of the Lough Patent, which PolarityTE also failed to disclose. On June 25, 2018, Citron Research published a report on the Lough Patent and PolarityTE's failures to disclose. PolarityTE's stock price fell sharply from closing at $38.97 on Friday, June 22, 2018 to opening at $25.60 on Tuesday, June 26, 2018. The stock closed at $28.14 on Tuesday, June 26, 2018.

On June 26, 2018, Moreno filed this suit in the United States District Court for the District of Utah on behalf of a purported class of all persons or entities that purchased shares of PolarityTE during the Class Period. In compliance with 15 U.S.C. § 78u-4 (a)(3)(A), on June 27, 2018, Moreno's counsel, Block & Leviton LLP, published an announcement that it had filed a securities fraud class action against PolarityTE, giving other shareholders until August 27, 2018 to file motions to be appointed lead plaintiff (the "Notice"). On July 6, 2018, Yedid Lawi filed a nearly identical class action complaint, also in this court, alleging the same facts and alleged violations during the same Class Period. On August 27, 2018, Michael A. Motto moved for appointment as lead plaintiff in this action. Also on August 27, 2018, Yedid Lawi moved for consolidation of the two competing class actions and for appointment as lead plaintiff in this action. On September 7, 2018, Motto filed a notice of Non-Opposition to Lawi's motion. On November 28, 2018, the court granted the motion to consolidate the related cases and gave all parties fourteen days to oppose Lawi's motion (until December 12, 2018). No parties opposed Lawi's motion. The court now rules on the motions for appointment as lead plaintiff and for appointment of lead counsel.

**ANALYSIS**

A. **LEAD PLAINTIFF**

In a private securities class action, the court must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4 (a)(3)(B)(i). This person is known as the "most adequate plaintiff." *Id*. The court must "adopt a [rebuttable] presumption that the most adequate plaintiff in any private action arising under this chapter is the person" that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a)(3)(B)(iii).

Three parties in this action meet the initial qualification for lead plaintiff. First, Jose Moreno who filed the complaint. Second, Michael Motto and third, Yedid Lawi, both of whom made motions in response to the Notice. Michael Motto, however, filed a Notice of Non-Opposition to Lawi's appointment as lead plaintiff, and the court accordingly DENIES his motion as moot. The court will therefore compare the financial interests of Jose Moreno and Yedid Lawi.

1. **Largest Financial Interest**

The PLSRA does not instruct the court how to determine the plaintiff with the largest financial interest. Various district courts in the Tenth Circuit have applied the "retention method,"[1] while others have looked only to the "largest monetary loss," to determine the largest financial

---

[1] *See In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 660 (D. Colo. 2000) (collecting cases).

interest.[2] Meanwhile, many courts apply the "Lax-Olsten" Factors, first articulated in *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. 1997) and adopted in *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y.1998). *See In re Crocs, Inc. Sec. Litig.*, 2008 WL 4298316, at *2 (D. Colo. 2008) (discussing various methods). The Lax-Olsten method compares four factors: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Lax* at *5. Here, Moreno does not propose a method for calculating financial interest. Lawi asserts that the court should look mainly to the fourth Lax-Olsten factor, the approximate loss suffered by the parties, to determine which of the proposed plaintiffs has the largest financial interest. As Lawi's motion is unopposed and his assertion is not contrary to law, the court will use the approximate loss method.

Moreno and Lawi both purchased shares during the Class Period. Moreno purchased 100 shares on June 8, 2018 at the price of $32.33 per share. *See* Plaintiff's Certification of Securities Fraud Class Action Complaint, Compl. at Exhibit 1 (ECF No. 2-1). Lawi purchased 1,500 shares on June 21, 2018 at $39.39 per share and 1,500 shares on June 22, 2018 at $39.62 per share. Lawi also sold shares during the Class Period. On June 21, 2018, Lawi sold 1,500 shares at $38.45 per share. The Class Period ended on June 22, 2018. The stock dropped after the corrective disclosure on June 25, 2018. On Tuesday, June 26, 2018 the stock opened at $25.60 and then the stock closed that day at $28.14. After the Class Period, on June 26, 2018, Lawi sold 500 shares at $26.00 per share and then an additional 1,000 shares at $26.31 per share. *See* Certification of Named Plaintiff Pursuant to Federal Securities Law, Lawi's Motion at Exhibit 3 (ECF No. 26-3).

---

[2] *See In re Nature's Sunshine Prod., Inc.*, 2006 WL 2380965, at *1 (D. Utah 2006).

Neither party offers any suggestion as to how total estimated loss should be calculated from the facts. Lawi asserts that his total estimated loss is $21,470.00. For this proposition, Lawi directs the court to his Damage Analysis (Exhibit Declaration Exhibit C, Motion at Exhibit 4). However, the spreadsheet contained therein does not clearly explain Lawi's damages calculation. The alleged loss calculation of $21,470.00 appears to be the difference between the total amount Lawi spent purchasing shares during the Class Period ($118,515.00) and the total proceeds received from the sale of his shares, both during and after the Class Period ($97,045.00). Lawi cites no authority as to whether this is the correct calculation. But as Lawi's motion is unopposed, the court will accept $21,470.00 as Lawi's calculation of his approximate loss.

Moreno on the other hand has failed to provide a damages calculation at all. He offers evidence that he purchased 100 shares during the Class Period at $32.33 per share. His total amount spent during the Class Period was therefore $3,233.00. Moreno does not offer a comparable calculation or indicate whether he sold his shares.[3] However, even if Moreno sold his shares for zero dollars after the Class Period, his loss would only be $3,233.00, which is still significantly less than Lawi's alleged loss of $21,470.00. The court therefore finds that Lawi has the greatest financial interest.

---

[3] Most courts do not consider any actual sales outside the Class Period. *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 660 (D. Colo. 2000), the court followed the parties "retention" value calculation and calculated damages using the "the value of the stock at the end of the class period." Other courts have used the 90-day average trading price. *See, e.g., In re Williams Securities Litigation,* 2002 WL 32153476 at *5 (N.D.Okla. July 8, 2002). But the parties have not provided the court with this information.

## 2. Requirements of Rule 23

The next determination in appointing lead plaintiff is to determine if Lawi "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Fed. R. Civ. P. 23(a) contains four requirements:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Although there are four requirements, "[f]or the purposes of a motion for appointment of lead plaintiff under Rule 23, it is proper to limit a court's inquiry into the final two prongs of Rule 23(a), typicality and adequacy." *Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 680 (D. Utah 2004); *see also In re Crocs, Inc. Sec. Litig.*, 2008 WL 4298316, at *2 (D. Colo. 2008).

First "typicality is present 'so long as the claims of the class representative and class members are based upon the same legal or remedial theory.'" *In re Crocs, Inc. Sec. Litig.*, 2008 WL 4298316, at *2 (quoting *In re Ribozyme,* 192 F.R.D. at 658). Lawi's claims are typical of those of other class members.[4] Lawi alleges that he was harmed by PolarityTE's alleged violations of the Exchange Act. Lawi has alleged the same Class Period as Moreno. And Lawi alleges that he was harmed in the same way as the other class members, namely by trading in PolarityTE stock during the Class Period because he purchased PolarityTE stock that was artificially inflated by PolarityTE's false or misleading statements and/or omissions of material fact.

---

[4] In fact, the complaint filed by Lawi in his original action that was consolidated with this case, Case No. 2:18-cv-541, is virtually identical to the complaint filed by Moreno in this action.

Next, "[t]he requirement of adequacy is satisfied on proof of '(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Id.* (quoting *In re Ribozyme*, 192 F.R.D. at 659). Lawi asserts that he has no conflict with any potential class members and that he has suffered such significant losses as to make him sufficiently interested in the outcome. No parties have opposed Lawi on these grounds and the memoranda support his assertions. Second, Lawi has selected two law firms to serve as co-lead counsel: Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer"); both of whom appear qualified and ready to "vigorously conduct the proposed litigation." Lawi has also proposed a "Liaison Counsel," Harper Law, PLC ("Harper Law"). The resumes of all three firms attest to a long, experienced history with class action securities fraud claims. For these reasons, the court finds that Lawi meets the requirements of both typicality and adequacy. The court therefore grants Lawi's motion to be appointed lead plaintiff.

### B. LEAD COUNSEL

Also before the court are Lawi and Motto's motions to appoint lead counsel. Motto's motion is DENIED as moot. Motto filed his notice of Non-Opposition to Lawi's motions on September 7, 2018, and Motto's proposed counsel, Sarah E. Spencer and Bryson R. Brown of Christensen & Jensen PC, withdrew the same day. The court thus turns to Lawi's motion.

15 U.S.C. § 78u-4 states that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4 (a)(3)(B)(v). And "[i]n most securities fraud actions, the related issues of the selection of lead plaintiff and lead counsel are decided concurrently." *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998). But unlike the appointment of lead plaintiff, which is governed by strict statutory

7

guidelines, "[t]he selection of lead counsel . . . is subject to the court's discretionary judgment that lead plaintiff's choice of representative best suits the needs of the class." *Id.* (internal citation and quotation marks removed).

Lawi moves the court to appoint Pomerantz and Holzer as Co-Lead Counsel and Harper Law as Liaison Counsel. In support of his motion, Lawi submitted the Declaration of Jeremy A. Lieberman, an attorney at Pomerantz, the firm resume of Pomerantz, the firm resume of Holzer, and the firm resume of Harper Law. Both Pomerantz and Holzer appear highly qualified and have experience with complex, securities fraud class action litigation. Harper Law's resume is less extensive than the other two, but it does attest to the experience of its founder, Jon V. Harper. Harper has worked on numerous class actions as well as serving as "liaison" counsel for multiple Utah class actions.

Although all proposed counsel appear qualified, Lawi has entirely failed to justify the appointment of three separate law firms as counsel in this matter. This court is concerned that the appointment of three law firms will only lead to exorbitant legal fees and duplicative filings. This concern is shared by other courts and by the PSLRA itself. "The PSLRA expressly limits the payment of attorneys' fees and expenses to no more than 'a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.'" *See Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 684 (D. Utah 2004) (quoting 15 U.S.C. § 78u–4(a)(6)). "The potential for duplicative services and the concomitant increase in attorneys' fees works against the approval of multiple lead counsel . . . . [T]he 'litigation by committee' approach to securities class actions may prove unnecessary and wasteful." *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998).

For these reasons, the court reserves ruling on Lawi's motion to appoint lead counsel. The court orders Lawi to file supplemental briefing on the issue of the necessity of multiple counsel within **ten days** of the date of this order. Lawi's brief should address the factual and legal justification for the approval of multiple counsel, including co-lead counsel and liaison counsel. Alternatively, Lawi may amend his motion to appoint lead counsel, selecting a single firm as lead counsel.

**ORDER**

The court HEREBY TERMINATES the Motion for Appointment of Movant Michael A. Motto as Lead Plaintiff and Approval of Lead Counsel (ECF No. 25) and GRANTS Lawi's Motion to Appoint Lead Plaintiff (ECF No. 26); but DEFERS ruling on Lawi's Motion to Appoint Lead Counsel (ECF No. 26). In so doing the court ORDERS:

1. Yedid Lawi shall be appointed lead Plaintiff in this case;
2. Within **ten days** of this order Lawi must file supplemental briefing as to why multiple lead counsel are necessary, or alternatively, Lawi may amend his motion to appoint lead counsel, proposing a single law firm as lead counsel;
3. Lawi shall file and serve a Consolidated Complaint no later than sixty (60) days after the court appoints Lead Counsel;
4. Defendants have sixty days after filing and service of the Consolidated Complaint to answer or otherwise respond to the Consolidated Complaint; AND
5. Within 90 days of service of the Consolidated Complaint, Lawi must file a motion for class certification pursuant to DUCivR 23-1(d).

**SIGNED** January 16, 2019

BY THE COURT:

_____

JILL N. PARRISH
United States District Judge